**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GILBERT CARRASCO,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. ED CV 10-0043 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION AND SUMMARY

On January 19, 2010, plaintiff Gilbert Carrasco ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

On March 22, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 11, 12.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 13.] Both Plaintiff and Defendant

subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 14, 16.]

Pursuant to a January 20, 2010 order regarding further proceedings, Plaintiff submitted a brief in support of his complaint ("Plaintiff's Brief") on April 20, 2010. [Docket No. 15.] On May 20, 2010, Defendant submitted his opposition brief ("Defendant's Brief"). [Docket No. 19.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia*, the parties' written submissions and the administrative record, the Court concludes that, as detailed below, the decision of the Administrative Law Judge ("ALJ") is free of legal error and is supported by substantial evidence. Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 27 years of age on the date of his first administrative hearing, has completed the eleventh grade. (Administrative Record ("AR") at 71, 86, 307, 310.) His past relevant work includes employment as an unloader, janitor, and gardener. (*Id.* at 18, 336, 393.)

Plaintiff protectively filed for DIB and SSI on June 10, 2005, alleging that he has been disabled since April 1, 2005 due to paranoid schizophrenia, depression, and vision problems. (AR at 42, 50, 71-73, 76, 299-304.) Plaintiff's applications, were denied initially and upon reconsideration, after which he filed a timely request for a hearing. (*Id.* at 39, 42-46, 50-54, 305, 306.)

On May 3, 2007, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (AR at 307, 309-23.) On May 14, 2007, the ALJ issued an unfavorable decision denying Plaintiff's request for benefits ("May 2007 Decision"). (*Id.* at 12-18.)

Plaintiff appealed the May 2007 Decision, which was denied by the Appeals

1  Council. (AR at 4-6, 7.) Plaintiff then sought review in this Court, Case No. ED CV
2  08-0392 CT, seeking review of the Commissioner's decision denying his
3  applications. (*See id.* at 350-51.) On August 6, 2008, the Court remanded the case
4  for further proceedings and directed the ALJ to properly consider the opinions of
5  Plaintiff's examining and treating physicians. (*Id.* at 350-60 ("Court's Remand
6  Order").) On October 14, 2008, the Appeals Council issued an order remanding the
7  action to the ALJ. (*Id.* at 349.)

8      On July 6, 2009, Plaintiff, represented by counsel, appeared and testified at a
9  second hearing before the ALJ. (AR at 378, 380-92.) Troy Scott, a vocational
10  expert ("VE") also testified. (*Id.* at 392-95.)

11      On October 20, 2009, the ALJ issued an unfavorable decision denying
12  Plaintiff's request for benefits. (AR at 327-38.) Applying the well-known five-step
13  sequential evaluation process, the ALJ found, at step one, that Plaintiff has not
14  engaged in substantial gainful activity since his alleged onset date of disability. (*Id.*
15  at 329.)

16      At step two, the ALJ found that Plaintiff suffers from severe impairments of
17  polysubstance abuse and substance-induced schizoaffective disorder. (AR at 329.)

18      At step three, the ALJ determined that the evidence does not demonstrate that
19  Plaintiff's impairment, either individually or in combination, meet or medically
20  equal the severity of any listing set forth in the Social Security regulations.[1] (AR at
21  330.)

22      The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

3

determined that he can "perform a full range of work at all exertional levels but with
the following nonexertional limitations: routine, repetitive entry level, minimally
stressful work; no contact with the general public and only superficial interpersonal
contact with co-workers and supervisors." (AR at 330 (emphasis omitted).)

Based on Plaintiff's RFC and the VE's testimony, the ALJ found, at step four,
that Plaintiff has the ability to perform his past relevant work as an unloader or
gardener's helper. (AR at 336.) The ALJ further determined that "in addition to
these jobs, . . . [Plaintiff] could do other jobs[,]" including general laborer, packager,
or dishwasher. (*Id.* at 336-37.) Thus, the ALJ concluded that Plaintiff was not
suffering from a disability as defined by the Act. (*Id.* at 327, 338.)

Plaintiff did not file a request for review by the Appeals Council of the ALJ's
decision. (Pl.'s Br. at 2; Def.'s Br. at 2.) The ALJ's decision stands as the final
decision of the Commissioner.

### III.

### STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny
benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
Administration must be upheld if they are free of legal error and supported by
substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as
amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings
are based on legal error or are not supported by substantial evidence in the record,
the court may reject the findings and set aside the decision to deny benefits.
*Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a
preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant

---

Cir. 2007).

4

evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## ISSUES PRESENTED

Four disputed issues are presented for decision here:

1. whether the ALJ failed to comply with the Court's Remand Order by failing to properly consider a treating physician's diagnosis of schizoaffective disorder, (*see* Pl.'s Br. at 2-5);

2. whether the ALJ failed to comply with the Court's Remand Order by failing to fully and fairly develop the record, (*id.* at 5-7);

3. whether the ALJ failed to properly consider the examining physician's opinion, (*id.* at 7-9); and

4. whether the ALJ failed to properly consider the effectiveness of Plaintiff's medication. (*Id.* at 9-10.)

The Court addresses each argument in turn.

/
/
/
/

# V.
# **DISCUSSION AND ANALYSIS**

A. <u>ALJ's Compliance with the Remand Order and Duty to Fully and Fairly Develop the Record</u>

Plaintiff makes two interconnected arguments. First, he contends that the ALJ failed to comply with the Court's Remand Order by improperly evaluating the medical evidence. (Pl.'s Br. at 2-5.) In particular, Plaintiff argues that "the ALJ ignored without explanation Plaintiff's diagnosis of Schizoaffective Disorder and the GAF score of 42 as opined by Plaintiff's treating physician [at Swift/Phoenix Clinic]." (*Id.* at 4.)

Second, Plaintiff maintains that the Court's Remand Order required the ALJ to develop the record by "ordering continued testing" as recommended by examining psychologist Nick B. Andonov, Ph.D. ("Dr. Andonov"). (Pl.'s Br. at 5-7.)

1. <u>The Court's Remand Order</u>

The starting point of the analysis lies with the Remand Order itself. A lengthy portion is quoted for the pertinent context. The Court's Remand Order found that:

> The ALJ reviewed plaintiff's treatment records, but found that his "treatment appeared to be directly related to his use and addiction to metha[m]phetamines." Based on the evidence of plaintiff's continued drug abuse in the record and the findings of consultative examiner, [psychiatrist Linda M. Smith, M.D. ("Dr. Smith")], the ALJ found that plaintiff "occasionally has drug induced hallucinations and psychotic episodes as a residual effect of his drug abuse," but that "there is absolutely no evidence that the plaintiff would have any mental impairment if he would cease drug use and choose to remain sober." Dr. Smith's opinions were based on the same type of me[n]tal status examination performed by plaintiff's treating doctors. The ALJ's failure to give specific

>and legitimate reasons for rejecting the repeated diagnoses of
>serious mental disorders and find[ings] of plaintiff's treating
>physicians before reaching these conclusions was material legal
>error.
>
>Plaintiff also contends that the ALJ failed to properly
>consider the findings of Nick Andonov, Ph.D., who gave plaintiff
>a psychiatric examination on April 10, 2006. . . . Dr. Andonov
>diagnosed plaintiff with "schizoaffective disorder by history and
>currently in residual phase," "amphetamine abuse with resulting
>trouble and induced psychotic disorders with delusions and
>hallucinations and reported current abstinence for the past three
>months," and a "learning disability – discalculia." . . . Dr.
>Andonov also recommended continued testing.
>
>The ALJ noted Dr, Andonov's diagnosis of amphetamine
>abuse with induced psychotic disorder, but did not discuss the
>doctor's other findings, including his finding that plaintiff had
>"serious symptoms with difficulties in occupational, academic,
>and social functioning." This was material error given the ALJ's
>findings that plaintiff could work despite his drug abuse and the
>findings of plaintiff's treating physicians concerning the serious
>to moderate symptoms that plaintiff presented on treatment.

(AR at 356-58 (internal brackets, citations, and footnote omitted).)

### 2. The ALJ Complied with the Remand Order and Fully and Fairly Developed the Record

In light of the above, Plaintiff's contentions are not persuasive. Four reasons guide this Court's determination.

First, the Court is persuaded that the ALJ complied with the Court's Remand Order in that he properly rejected the opinion of Plaintiff's treating physicians at the

7

Swift/Phoenix Clinic. In rejecting the diagnosis of schizoaffective disorder, the ALJ relied on Dr. Smith's opinion and gave specific and legitimate reasons supported by substantial evidence. (*See* AR at 332-34.)

For instance, the ALJ found that Plaintiff received "minimal treatment from Swift/Phoenix Clinic and on January 4, 2007[, Plaintiff's] case was closed due to non compliance to treatment." (AR at 332); 20 C.F.R. § 404.1527(d)(2) (generally the more times the treating physician has treated a claimant and the more knowledge the treating physician has about the claimant's impairments, the more weight given to the opinion of the treating physician); *Kladde v. Astrue*, 2009 WL 838104, at *5 (C.D. Cal. 2009) (ALJ's rejection of treating physician's opinion based on "minimal treatment" is specific and legitimate reason).

In fact, Plaintiff does not contest that the ALJ's characterization of Plaintiff's treatment at the Swift/Phoenix Clinic as "minimal" is an accurate description supported by the record. (*See generally* Pl.'s Br. at 4.)

Second, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff does not suffer from schizoaffective disorder. The only evidence Plaintiff points to indicating that he suffers from schizoaffective disorder are the treatment notes from the Swift/Phoenix Clinic. However, the Court is not convinced that the treatment notes clearly indicate Plaintiff was conclusively diagnosed with schizoaffective disorder. (*See* AR at 225.) A review of the record demonstrates that one of the treating physicians at the Swift/Phoenix Clinic reported a "rule-out" diagnosis of schizoaffective disorder. (*Id.*; *see also id.* at 334 (ALJ stating that Plaintiff "has been given [schizoaffective disorder] as a rule out diagnosis with a primary diagnosis of polysubstance abuse with induced psychosis").)

A "rule-out" diagnosis is by no means a diagnosis. In the medical context, a "rule-out" diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out. *See Langford v. Astrue*,

2008 WL 2073951, at *3 (E.D. Cal. 2008); *United States v. Grape*, 549 F.3d 591, 593-94 n. 2 (3rd Cir. 2008); *Williams v. United States*, 747 F. Supp. 967, 978 n. 19 (S.D.N.Y. 1990).

Accordingly, it is not entirely clear that Plaintiff's treating physicians established a diagnosis of schizoaffective disorder. (*See also* AR at 263 (treatment note from Arrowhead Regional Medical Center also indicating a "rule-out" diagnosis of schizoaffective disorder)); *Aukland*, 257 F.3d at 1035 (if the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ[]") (internal citation omitted).

Third, with respect to Plaintiff's argument that the ALJ erred by not discussing Plaintiff's global assessment of functioning ("GAF") score[3] of 42, the Court does not find any error. (Pl.'s Br. at 4; AR at 218.) Although the ALJ did not expressly discuss the GAF score of 42, as explained above, he properly considered Plaintiff's treatment records from the Swift/Phoenix Clinic, which included the GAF score. "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected") (internal citation and quotation marks omitted).

Fourth, contrary to Plaintiff's assertion that "the ALJ should have made an effort to develop the record by ordering continued testing," (Pl.'s Br. at 7), the

---

[3] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).

Court's Remand Order did not obligate the ALJ to develop the record by ordering further testing on Plaintiff's behalf. The Remand Order found that the ALJ's May 2007 Decision failed to "discuss [Dr. Andonov's] other findings, including his finding that plaintiff had 'serious symptoms with difficulties in occupational, academic, and social functioning'" and "[i]f, on remand, the Commissioner determines that the opinions of a treating or examining physician should be rejected, he *should give legally sufficient reasons* for doing so." (*See* AR at 357-58 (citation omitted and emphasis added).) Accordingly, the Court's Remand Order merely directed the ALJ to discuss Dr. Andonov's findings and provide legally sufficient reasons for rejecting his opinion *if* the ALJ found that his opinion should be rejected.

Here, the ALJ summarized and discussed Dr. Andonov's findings and provided a specific and legitimate reason supported by substantial evidence for rejecting his opinion. (*See* AR at 334.) The ALJ stated that he gave "little weight" to the "one time evaluation from Dr. Andonov" because "the premise of his findings are based on [Plaintiff] being credible in his reporting of his symptoms and history. [Plaintiff] is not credible as a historian or regarding subjective complaints." (*Id.*) Dr. Andonov's opinion was based on Plaintiff's subjective complaints, which the ALJ properly discounted.[4] *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

---

[4] The Court notes that Plaintiff does not dispute the ALJ's credibility finding, nor could he. The record demonstrates that Dr. Andonov's opinion is not supported by Plaintiff's subjective complaints. For instance, contrary to Plaintiff's claims of disability, his admitted daily activities include "clean[ing] house, watch[ing] tv, read[ing] books, try[ing] to exercise, and eat[ing] or mak[ing] dinner." (AR at 97.) Plaintiff further elaborates that he can make "complete meals, several courses, [including] dessert." (*Id.* at 99.) He is also able to dig, clean, do laundry, make repairs and garden. (*Id.*) He is able to pay his own bills, handle a saving account, count change, and use a checkbook or money order. (*Id.* at 100.) Curene L. Stoltz ("Ms. Stoltz"), Plaintiff's girlfriend, also completed a Third Party Function Report which supports Plaintiff's statements regarding his daily activities. (*See id.* at 105-

602 (9th Cir. 1999) (treating physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted).

### B. The ALJ's Evaluation of the Medical Evidence

Plaintiff also contends that the ALJ failed to consider a Work Capacity Evaluation form completed by Marcia Hudson, M.D. ("Dr. Hudson") on June 19, 2009. (Pl.'s Br. at 7-9.) Specifically, Plaintiff contends that the "ALJ has failed to provide specific and legitimate reasons for rejecting Dr. Hudson's findings." (*Id.* at 9.)

#### 1. The ALJ Must Provide Specific and Legitimate Reasons Supported by Substantial Evidence to Reject a Treating Physician's Opinion

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

---

11.) Ms. Stoltz reported that Plaintiff helps care for their child and "can cook a lot of meals when told (and good)." (*Id.* at 107.)

11

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). If the opinion of an examining physician is rejected in favor of the opinion of a nonexamining physician, the ALJ may do so only by providing specific and legitimate reasons. *Lester*, 81 F.3d at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

### 2. The ALJ's Analysis of Dr. Hudson's Opinion

Here, in rejecting Dr. Hudson's opinion, the ALJ found that her opinion was not supported by objective medical evidence. In particular, the ALJ stated

> I have read and rejected the check list format style statement of disability completed by [Dr. Hudson]. The form is not supported by treatment records, any diagnosis, or objective tests or clinical findings. There is no evidence to support this is anything more than a one time evaluation for the purpose of litigation.

(AR at 336.)

### 3. The ALJ Properly Evaluated Dr. Hudson's Opinion

The Court finds that the ALJ properly rejected Dr. Hudson's opinion with a specific and legitimate reason supported by substantial evidence. The ALJ's explanation, that the "[check list] form [completed by Dr. Hudson] is not supported by treatment records, any diagnosis, or objective tests or clinical findings," is a specific and legitimate reason. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Matney*, 981 F.2d at 1019; *Batson v. Comm's of Social Sec. Admin.*, 359, F.3d 1190, 1195 (9th Cir. 2004) (ALJ did not err in giving minimal evidentiary

weight to opinions of treating physicians which were, in the form of a checklist, not supported by objective evidence, and contradicted by other statements and assessments of plaintiff's medical condition). Notably, the record contains no further elaboration by Dr. Hudson on her opinion. (*See generally* AR at 1-396.) Thus, substantial evidence supports the ALJ's interpretation of the medical evidence and he properly rejected Dr. Hudson's opinion.

Plaintiff argues that "the ALJ's finding that Dr. Hudson's . . . assessment is not supported by treatment records, objective tests, or clinical findings triggered the ALJ's duty to conduct an appropriate inquiry by recontacting the doctor to obtain clarification or seek additional evidence." (Pl.'s Br. at 9 (internal quotations marks and brackets omitted).) However, this duty is triggered only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. Here, the record before the ALJ was neither ambiguous nor inadequate to allow for a proper evaluation of the medical evidence.

### C. Consideration of the Type, Dosage, Effectiveness and Side Effects of Plaintiff's Medication

Plaintiff next contends that the ALJ "erred in failing to consider and evaluate the type, dosage and effectiveness of Plaintiff's medications." (Pl.'s Br. at 10.) Plaintiff argues that he "reported in the disability report that the Risperdal medication 'didn't seem to work.'" (*Id.* (internal citation omitted).)

#### 1. The ALJ Must Consider Type, Dosage, Effectiveness, and Side Effects of Medication Only If Such Factors Have Significant Impact on Ability to Work

Pursuant to Social Security Ruling ("SSR") 96-7p,[5] 1996 WL 374186, at *3,

---

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the

an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." But an ALJ need only consider those factors that have a "significant impact on an individual's ability to work." *Erickson v. Shalala,* 9 F.3d 813, 817-18 (9th Cir. 1993) (internal quotation marks and citation omitted).

        2.      <u>The ALJ Did Not Fail to Properly Consider the Effectiveness of Plaintiff's Medication</u>

As an initial matter, to the extent Plaintiff challenges the previous assessment of Plaintiff's medication side effects made by the ALJ, the Court has already deemed this determination proper and will not revisit its prior findings. (*See* AR at 358 (Remand Order affirming on the issue of the ALJ's consideration of Plaintiff's medication side effects)); *see also Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'") (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

In any event, despite Plaintiff's contentions, the ALJ did not err in failing to evaluate the type, dosage and effectiveness of Plaintiff's medications. While Plaintiff did mention to his treating physician that he "[f]eels [his] meds aren't working," (*see* AR at 242, 264), the ALJ was not obligated to consider the effectiveness of Plaintiff's medications given that the objective medical evidence does not support Plaintiff's assertion that his medications were ineffective. In fact, the Court found numerous instances in the record where treating physicians reported that Plaintiff was non-compliant with his prescribed course of treatment. (*See, e.g.,*

---

agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

*id.* at 211 (treatment note from Swift/Phoenix Clinic indicating Plaintiff's "case is being closed due to non compliance to treatment"), 213 (treatment note from Swift/Phoenix Clinic indicating Plaintiff's compliance to medication plan was "poor"), 232 (Dr. Andonov reporting that Plaintiff "stopped taking medication"), 238 (treatment note from January 23, 2007 indicating Plaintiff has "poor medication compliance").) The Court fails to see how the ALJ or Plaintiff's treating physicians would be able to assess the effectiveness of Plaintiff's medications given his repeated non-compliance with his prescribed treatment plan. Accordingly, the Court finds that the ALJ did not err in failing to evaluate the effectiveness of Plaintiff's medications.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: February 8, 2011        _____
                                Hon. Jay C. Gandhi
                                United States Magistrate Judge

15